Gilbert JEFFERS, Plaintiff-Appellant,

v.

STERLING GARRETT COAL COMPA-
NY, Defendant-Appellee.

Supreme Court of Tennessee.

June 25, 1979.

Sidney R. Seals, Sexton, Sexton & Beaty, Oneida, Tenn., for plaintiff-appellant.

Frank Q. Vettori, O'Neil, Parker & Williamson, Knoxville, Tenn., for defendant-appellee.

OPINION

HERSCHEL P. FRANKS, Special Justice.

Plaintiff's claim for permanent total disability benefits due to coal worker's pneumoconiosis under the Workmen's Compensation Law was denied by the trial court.

Plaintiff, on appeal, assigns as errors, the failure of the Court to find plaintiff disabled by reason of coal worker's pneumoconiosis and failure to apply the appropriate standards for determining disability as directed by *T.C.A.*, § 50–1102.

The complaint alleged that plaintiff was employed by defendant as a coal miner, became totally and permanently disabled due to coal worker's pneumoconiosis and his occupational disease resulted from employment with the defendant. Defendant's answer admitted the parties are bound by the Workmen's Compensation Law, and joined issue on the allegations. The judgment in the case recites, in part, "[T]he Court finds all of the issues joined in favor of the defendant, Sterling Garrett Coal Company" and the suit was ordered dismissed with prejudice.[1]

---

1. Plaintiff has appended to his brief a copy of what purports to be a letter from the trial judge to the attorneys in the case, setting forth certain findings and conclusions. The document does not appear in the record and no memorandum opinion was incorporated by reference in the final decree. We cannot consider the sub-stance of the document; *see Simmons v. Taylor*, 106 Tenn. 729, 63 S.W. 1123 (1901).

"[T]he filing of specific findings of fact in a compensation suit is not mandatory on the part of Chancery, Circuit and Criminal Courts. . . . However, . . . [s]pecific findings by the

The issue thus becomes whether there is any material evidence to substantiate the conclusions of the trial court when the applicable standards are applied to the evidence. *See Stratton-Warren v. Parker*, 557 S.W.2d 494 (Tenn.1977).

In determining the applicable standards, *T.C.A.*, § 50–1102, directs and provides in pertinent part:

In considering whether an employee has the occupational disease of coal worker's pneumoconiosis and is totally disabled or dies therefrom all the presumptions, criteria and standards contained in or promulgated by reason of the Federal Coal Mine Health and Safety Act of 1969, Public Law 91–173, specified as the basis for determining eligibility of applicants for benefits because of said disease or its effects shall be used and be applicable under this law; . . .

In *Blankenship v. Old Republic Ins. Co.*, 539 S.W.2d 23 (Tenn.1976) and *Moore v. Old Republic Ins. Co.*, 512 S.W.2d 564 (Tenn. 1974), this Court held that the statute "adopted the Federal law concerning coal worker's pneumoconiosis as the law in Tennessee." 512 S.W.2d at 567.

The portions of the Federal Coal Mine Health and Safety Act pertaining to coal worker's pneumoconiosis are codified at 30 U.S.C. § 901, *et seq*. Regulations promulgated by the Secretary under the Act's authority are set forth in 20 C.F.R. § 410.401 *et seq*.

Total disability is defined in regulation 20 C.F.R. § 410.412 as follows:

(a) A miner shall be considered totally disabled due to pneumoconiosis if:

(1) his pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time, and

(2) His impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 410.426 provides when various medical tests [2] are not conclusive within the regulations, disability is to be determined by ascertaining whether the employee is able to perform other comparable work (to mining) in light of his experience and education, and further states:

A miner shall be determined to be under a disability only if his pneumoconiosis is or was the primary reason for his inability to engage in such . . . work. *Medical impairments other than pneumoconiosis may not be considered.* [Emphasis supplied.]

Finally, a specific standard relating to miners employed for 15 years or more in coal mines is set forth in 30 U.S.C. § 921(c)(4), and provides:

(4) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements or paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's em-

---

trial court are of incalculable aid to this Court . . . [and] 'furnish[es] perhaps the only means by which this court could intelligently review the action of the court below'." *Murray Ohio Mfg. Co. v. Vines*, 498 S.W.2d 897 at pp. 901 2 (Tenn.1973).

2. Medical tests performed on plaintiff by the various physicians were not conclusive.

ployment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

The presumption and conditions are substantially restated in 20 C.F.R. § 410.414(6).

The plaintiff worked as a bulldozer operator in various strip mines in and around Scott County, Tennessee for a period of 16 to 18 years. He was employed in that capacity by defendant from May 12, 1975 until June 23, 1975. On the latter date he suffered a heart attack and was not gainfully employed from that time until the date of trial.

Plaintiff's testimony of employment for more than 15 years in strip mining was not contradicted. He described dusty conditions prevailing generally during his mining activities and exposure to coal dust, particularly when loading trucks. This evidence satisfies one of the two elements necessary to trigger the presumption created by 30 U.S.C. § 921(c)(4). The other element is "other evidence . . . demonstrating the existence of a totally disabling chronic respiratory impairment." *Petry v. Califano*, 577 F.2d 860 (4th Cir. 1978).

At the trial medical evidence was introduced from three physicians, being Dr. Swann, a thoracic specialist engaged by the plaintiff; Dr. Hudson, also a thoracic specialist engaged by defendant; and Dr. Leeds, the plaintiff's family doctor.

Plaintiff's witness, Dr. Swann, diagnosed pneumoconiosis in plaintiff. Because the doctor in his experience had not observed the disease in a strip miner, he forwarded x-rays of plaintiff's chest to Dr. Keith Morgan of the University of West Virginia, a nationally known authority in the field of "black lung" or pneumoconiosis. Dr. Morgan confirmed Dr. Swann's analysis; Dr. Swann also concluded that plaintiff was disabled as a result of his pulmonary impairment. Dr. Leeds diagnosed pneumoconiosis on the basis of x-rays and physical examinations and concluded plaintiff was totally disabled from all causes, apparently including his heart condition, which may not be considered in evaluating the employee's disability from pneumoconiosis. *See* 20 C.F.R. § 410.426 *supra.*

Dr. Hudson diagnosed plaintiff's pulmonary disorders to include bronchitis and emphysema. He stated the shadows on plaintiff's x-rays were "consistent with" pneumoconiosis, and he was of the opinion that plaintiff's pulmonary problems alone would prevent his working in the mines.

The medical evidence establishes that (1) plaintiff presented "other evidence" of the existence of a totally disabling respiratory or pulmonary impairment and was thus entitled to the benefit of the rebuttable presumption that he is totally disabled due to pneumoconiosis; and (2) defendant presented no material evidence that plaintiff did not suffer from pneumoconiosis.

Thus, rebuttal turns on the issue of whether plaintiff's respiratory disability arose out of, or in connection with, employment in a coal mine.

The case of *Peabody Coal Co. v. Benefits Review Board*, 560 F.2d 797 (7th Cir. 1977) states:

[I]n the event that a claimant's respiratory ailment has multiple causes, the hearing officer must determine that pneumoconiosis is the most important or fundamental cause of the impairment.[3] At p. 801.

While no fact finding appears in the record on this issue, the defendant has offered material evidence, *i. e.*, the testimony of Dr. Hudson, that plaintiff's pneumoconiosis is not the most important or fundamental

---

3. The *Peabody* case also considers the meaning of the phrase "primary reason for his inability to engage in . . . work" from 20 C.F.R. § 410.426, and concludes that primary means first in degree and importance of all respiratory ailments but not necessarily the first to develop.

cause of his pulmonary impairment. The pertinent evidence from the doctor's testimony is:

Q. Doctor, as a result of your examination and the history, of course, that you obtained from this patient and all of the other information that you have in relation to the patient did you arrive at a diagnosis and, if so, what were those diagnoses?

A. Well, I concluded that he had chronic bronchitis and he had emphysema and that he had chest x-ray shadows which were compatible with simple pneumoconiosis, . . .

Q. Doctor, do you have an opinion as to the cause of the emphysema you found in this patient with a reasonable degree of medical certainty?

A. In all probability it was from the cigarette smoking.

. . . . .

Q. Doctor, can you state with a reasonable degree of medical certainty how much of Mr. Jeffers' pulmonary disability that you previously stated is related to his cigarette smoking?

A. Well, I would feel the major portion is. I think it's impossible to quantitate just exactly how much each factor would interfere here but I think it's clear that he has emphysema as well as these abnormal x-ray shadows and I would think with the data we have to go on that I would say cigarette smoking would account for the major portion of his illness.

The foregoing testimony is material evidence to sustain a determination by the trial judge that the most important or fundamental cause of plaintiff's pulmonary impairment was emphysema, not arising out of or in connection with his employment in a coal mine, which satisfies one of the statutory bases to rebut the presumption afforded by 30 U.S.C. § 921(c)(4). We conclude, upon application of the standards and the material evidence rule, that the evidence sustains the judgment of the trial court.

The judgment of the trial court is affirmed. Costs of the appeal are adjudged against the appellant and his surety.

FONES, COOPER, HARBISON and BROCK, JJ., concur.